UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AGOSTINO GROSSI,

        Plaintiff,

v.

BOSCO CREDIT, LLC, et al.,

        Defendants.

Case No. 16-cv-03100-MEJ

**ORDER RE: MOTION TO DISMISS**

Re: Dkt. No. 22

### INTRODUCTION

Plaintiff Agostino Grossi ("Plaintiff") filed this action against Defendants Bosco Credit, LLC ("Bosco"); Franklin Credit Management Corporation ("FCMC"); and T.D. Service Financial Corporation ("T.D. Service") (collectively, "Defendants") for claims arising out of foreclosure-related activities involving his home. *See* First Am. Compl. ("FAC"), Dkt. No. 20. Pending before the Court is Defendants' Motion to Dismiss. Mot., Dkt. No. 22. The Court previously found this matter suitable for disposition without oral argument. Dkt. No. 38. Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS** Defendants' Motion.

### BACKGROUND[1]

Plaintiff is the owner of the property located at 21 Mount Hamilton Court, Clayton, California 94517 (the "Property"). FAC ¶ 12. The Property is Plaintiff's principal residence and is security for a loan made for personal, family, or household purposes. *Id.* Specifically, on or around January 13, 2006, Plaintiff obtained a secured mortgage loan (the "Loan") with CalState 9

---

[1] Unless otherwise noted, the factual background is taken from Plaintiff's FAC.

Credit Union ("CalState 9"). *Id.* ¶ 13. Plaintiff executed a Deed of Trust in favor of CalState 9 to secure the financing. *Id.* Around June 30, 2008, the Loan transferred to Bosco, and FCMC began servicing the Loan. *Id.* ¶ 14.

Plaintiff fell behind on his mortgage payments in or around January 2008; on February 2, 2009, he filed a Chapter 7 bankruptcy petition with the United States Bankruptcy Court for the Northern District of California. *Id.* ¶¶ 14-15. The Property was underwater at the time of Plaintiff's bankruptcy. *Id.* ¶ 15. On February 2, 2009, Plaintiff filed a Schedule A and a Schedule D in his Chapter 7 petition, which stated, respectively, that the Property's current value was $550,000 while the amount of the secured claim was $901,946.71 and that the total amount owed to FCMC was $101,419. *Id.* Plaintiff received a discharge on May 12, 2009, and he believed that this also discharged his personal obligation to pay the debt. *Id.* ¶ 16.

On February 10, 2016, FCMC, on behalf of Bosco, sent Plaintiff a Notice of Default and Intent to Accelerate ("February 10 Notice"), which stated Plaintiff was past due in his payments since January 20, 2008 and that the total delinquency owed on the Loan was $76,961.99. *Id.* ¶ 18. Of that amount, $75,606.99 was interest and $1,260 was late charges. *Id.* It further "stated that to the extent the obligation has been discharged, the notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect an indebtedness as your personal obligation[.]" *Id.* But the Notice also stated that Plaintiff could cure the default by paying $76,961.99 by March 11, 2016. *Id.* Plaintiff alleges that on or around March 15, 2016, FCMC, again on Bosco's behalf, caused T.D. Service[2] to record a Notice of Default indicating that the amount necessary to reinstate the loan was $78,776.67, for principal and interest due on the Loan since January 2008. *Id.* ¶ 19.

On March 21, 2016, T.D. Service, on behalf of Bosco, sent Plaintiff a Debt Validation Notice. *Id.* ¶ 20. The Debt Validation Notice stated that as of March 14, 2016, the delinquency owed for the Property was $78,776.67 and that the total amount owed on the Loan was

---

[2] Though not alleged in the FAC, it appears T.D. Service is the trustee on the Deed of Trust. *See* Mot. at 2 (describing T.D. Service as "the foreclosure trustee on the [Deed of Trust]"); Defs.' Suppl. Br. at 2 (same).

$101,419.18.  *Id.*  The total amount included unpaid principal, plus accrued interest and any accrued NSF fees,[3] escrow advances, late charges, or suspense credits, and attorney and/or trustee fees and costs.  *Id.*

Plaintiff alleges that although his Chapter 7 petition discharge order gives Bosco and FCMC a right to enforce a valid lien against the Property, he "is informed and believes" that Bosco and FCMC are not entitled to add late charges or interest to his loan given that the Property is currently underwater.  *Id.* ¶ 21.  Accordingly, Plaintiff sent T.D. Service a Debt Validation Letter on April 21, 2016.  *Id.*

On or around May 19, 2016, FCMC, again on behalf of Bosco, provided relevant loan documents, including FCMC's loan history summary and payoff letter.  *Id.* ¶ 22.  FCMC's loan history shows a monthly $45 late charge from June 2009 to June 2010, that is, the period after Plaintiff's Chapter 7 discharge.  *Id.*  A May 18, 2016 payoff statement from T.D. Service also shows that as of May 31, 2016, the total amount necessary to pay off the loan was $185,439.21, which consists of a principal balance of $101,419.18 plus $81,540.80 of interest; $1,355 of fees; $45 of release fees; and $1,079.23 of estimated foreclosure fees and costs.  *Id.*; *see id.*, Ex. B (statement dated May 18, 2016 from T.D. Service).

Plaintiff filed his initial complaint on June 7, 2016 and the operative FAC on August 10, 2016.  *See* Compl., Dkt. No. 1; FAC.  Plaintiff's FAC asserts claims of (1) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e, against T.D. Service and FCMC; (2) violations of California Civil Code section 2924e against Bosco and FCMC; (3) violations of California Civil Code section 2924.17 against FCMC; and (4) negligence against Bosco and FCMC.  *Id.* ¶¶ 24-70.

## REQUEST FOR JUDICIAL NOTICE

Before proceeding to the substantive arguments, the Court addresses Defendants' Request for Judicial Notice ("RJN").  RJN, Dkt. No. 23; *id.*, Exs. 1-4.  Under Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it:

---

[3] Plaintiff's FAC does not define "NSF fees."  *See* FAC.  Presumably, "NSF" stands for "nonsufficient funds."

3

(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Documents in the public record may be judicially noticed to show, for example, that a judicial proceeding occurred or that a document was filed in another case, but a court may not take judicial notice of findings of facts from another case. *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts "may take judicial notice of court filings and other matters of public record."). Nor may a court take judicial notice of any matter that is in dispute. *Lee*, 250 F.3d at 689-90; *see also Ruiz v. City of Santa Maria*, 160 F.3d 543, 548 n.13 (9th Cir. 1998) (finding judicial notice inappropriate where the facts to be noticed were not relevant to the disposition of the issues before the court). Defendants request the Court take judicial notice of the following documents:

1. A Deed of Trust recorded on January 13, 2006 in the Contra Costa County Recorder's Office, bearing instrument number 2006-0013396-00. RJN, Ex. 1.

2. An Assignment of Deed of Trust recorded on June 30, 2008 in the Contra Costa County Recorder's Office, bearing instrument number 2008-0145894-00. *Id.*, Ex. 2.

3. A Notice of Default and Intent to Accelerate dated February 10, 2016. *Id.*, Ex. 3.

4. A Debt Validation Notice dated March 21, 2016. *Id.*, Ex. 4.

As Exhibits 1 and 2 are matters of public record, the Court **GRANTS** Defendants' request as to them. There is no indication Exhibits 3 and 4 publicly available documents; however, as Plaintiff does not object to them, the Court **GRANTS** Defendants' request as to Exhibits 3 and 4 as well.

## LEGAL STANDARD

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. L.A. Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## DISCUSSION

### A. FDCPA Claim

Plaintiff's first claim alleges T.D. Service and FCMC violated the FDCPA, which "prohibits debt collectors 'from making false or misleading representations and from engaging in various abusive and unfair practices.'" *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th

United States District Court
Northern District of California

Cir. 2010) (quoting *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995)).

"There are four elements to an FDCPA cause of action: (1) the plaintiff is a 'consumer' under 15 U.S.C. § 1692a(3); (2) the debt arises out of a transaction entered into for personal purposes; (3) the defendant is a 'debt collector' under 15 U.S.C. § 1692a(6); and (4) the defendant violated one of the provisions contained in 15 U.S.C. §§ 1692a-1692o." *Wheeler v. Premiere Credit of N. Am., LLC*, 80 F. Supp. 3d 1108, 1112 (S.D. Cal. 2015) (citing *Turner v. Cook*, 362 F.3d 1219, 1226-27 (9th Cir. 2004)). In other words, "[t]he FDCPA imposes liability only when an entity is attempting to collect debt." *Ho v. ReconTrust Co., NA*, 858 F.3d 568, 571 (9th Cir. 2016) (citing 15 U.S.C. § 1692(e)). The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). A "debt collector" includes any person: (1) "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." 15 U.S.C. § 1692a(6).

Plaintiff "alleges Defendants [T.D. Service and FCMC] violated 15 U.S.C. [§] 1692e by making false representation of the amount of debt in connection with its collection of the debt owed to Bosco" by adding interests and fees to the debt while the Property was underwater in violation of 11 U.S.C. § 506(b). *Id.* ¶¶ 27, 32-33; *see* 15 U.S.C. § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."). Plaintiff contends these misrepresentations were made in FCMC's February 10 Notice and T.D. Service's Debt Validation Notice. FAC ¶¶ 18-19, 33; *see* RJN, Ex. 3 (Feb. 10 Notice); *id.*, Ex. 4 (Debt Validation Notice). He asserts "Defendants' demand . . . for interest and late charges during the period in which the amount of the secured debt against Plaintiff's Property was more than the value of the [P]roperty is a false, deceptive, and misleading representation regarding the amount of the loan which it made in connection with its collection of the [L]oan." *Id.* ¶ 34.

6

1    Plaintiff cannot base an FDPCA claim on a violation of the Bankruptcy Code. *See* Pl.'s

2 Suppl. Br. at 4, Dkt. No. 50 ("Defendants' actions fit squarely within the meaning of debt

3 collection activity pursuant to the FDCPA" because their February and May 2016

4 "correspondence . . . demonstrated interest had been added to Plaintiff's loan in violation of the

5 Bankruptcy Code," 11 U.S.C. § 506(b).); FAC ¶ 27. Indeed, the Ninth Circuit has rejected

6 attempts to use the FDCPA as remedy for a Bankruptcy Code violation. *See Walls v. Wells Fargo*

7 *Bank, N.A.*, 276 F.3d 502, 510-11 (9th Cir. 2002). In *Walls*, the plaintiff alleged the lender

8 "engaged in unfair and unconscionable collection practices, which are forbidden by the FDCPA,

9 by trying to collect her debt in violation of the discharge injunction" she received in a bankruptcy

10 proceeding. *Id.* at 510. Recognizing "[t]here [was] no escaping that [the plaintiff's] FDCPA

11 claim [was] based on an alleged violation of [11 U.S.C.] § 524," the Ninth Circuit held that

12 "[w]hile the FDCPA's purpose is to avoid bankruptcy, if bankruptcy nevertheless occurs, the

13 debtor's protection and remedy remain under the Bankruptcy Code." *Id.* In so holding, the *Wall*

14 court found the "complex, detailed, and comprehensive provisions of the lengthy Bankruptcy

15 Code . . . demonstrates Congress's intent to create a whole system under federal control which is

16 designed to bring together and adjust all of the rights and duties of creditors and embarrassed

17 debtors alike." *Id.* (internal quotation marks omitted); *see* 11 U.S.C. § 105 (establishing court's

18 power to enforce Bankruptcy Code). The court was not persuaded that "Congress intended to

19 allow debtors to bypass the [Bankruptcy] Code's remedial scheme when it enacted the FDCPA."

20 *Walls*, 276 F.3d at 511; *see id.* ("Nothing in either Act persuades us that Congress intended to

21 allow debtors to bypass the Code's remedial scheme when it enacted the FDCPA."). To allow

22 debtors to do so would "create a new remedy would put [courts] in the business of legislating."

23 *Id.* at 507. The Ninth Circuit therefore "agree[d] with the Sixth Circuit's view in *Pertuso v. Ford*

24 *Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir. 2000), that it is not up to [the courts] to read other

25 remedies into the carefully articulated set of rights and remedies set out in the Bankruptcy Code."

26 *Id.* Because the plaintiff's "remedy for violation of § 524 no matter how cast lie[d] in the

27 Bankruptcy Code, her simultaneous FDCPA claim [was] precluded." *Id.*

28    Plaintiff's FDCPA claim is based on 11 U.S.C. § 506(b), a different section of the

Bankruptcy Code that the Ninth Circuit analyzed in *Walls*. Nevertheless, the *Walls* analysis is applicable to the instant case, as 11 U.S.C. § 105, the remedial scheme at issue in *Walls*, also applies here. *See* 11 U.S.C. § 103 ("[C]hapters 1, 3, and 5 of this title apply in a case under chapter 7 . . . of this title[.]"); FAC ¶¶ 15, 30 (alleging Plaintiff filed for Chapter 7 bankruptcy). As such, the Court finds Plaintiff cannot assert an FDCPA claim based on a violation of the Bankruptcy Code.

Moreover, Plaintiff fails to allege facts showing T.D. Service and Franklin are debt collectors under the FDCPA. "[A]ctions taken to facilitate a non-judicial foreclosure, such as sending the notice of default and notice of sale, are not attempts to collect 'debt' as that term is defined by the FDCPA." *Ho*, 858 F.3d at 572. This is because

> [t]he object of a nonjudicial foreclosure is to retake and resell the security, not to collect money from the borrower. California law does not allow for a deficiency judgment following non-judicial foreclosure. This means that the foreclosure extinguishes the entire debt even if it results in a recovery of less than the amount of the debt.

*Id.* at 571-72 (citing Cal. Civ. Code § 580d(a); additional citations omitted). In other words, "[b]ecause the money collected from a trustee's sale is not money owed by a consumer, it isn't 'debt' as defined by the FDCPA." *Id.* at 572; *see id.* ("'[F]oreclosing on a trust deed is an entirely different path' than 'collecting funds from a debtor.'" (quoting *Hulse v. Ocwen Fed. Bank*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002))).

California Civil Code section 2924(a)(1) further provides that a "trustee, mortgagee, or beneficiary . . . shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default." A foreclosing entity therefore "c[an]not conduct [a] trustee's sale until it sen[ds] the notice of default and the notice of sale." *Ho*, 858 F.3d at 573; *see Moeller v. Lien*, 25 Cal. App. 4th 822, 830 (1994) ("The foreclosure process is commenced by the recording of a Notice of Default and Election to Sell by the trustee."). "If [a trustee] can administer a trustee's sale without collecting a debt, it must be able to maintain that status when it takes the statutorily required steps to conduct the trustee's sale." *Ho*, 858 F.3d at 573. As such, "[t]he right to 'enforce' the security interest

8

necessarily implies the right to send the required notices; to hold otherwise would divorce the notices from their context." *Id.*

There are no facts that either T.D. Service or FCMC went beyond the statutorily mandated communications required to foreclose on the Property. Pursuant to 15 U.S.C. § 1692g, T.D. Service was required to send Plaintiff

> a written notice containing—
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

California Civil Code section 2924 similarly required FCMC to send Plaintiff the February 10 Notice in order to begin non-judicial foreclosure proceedings. *See* Cal. Civ. Code § 2924(a)(1) (A "trustee, mortgagee, or beneficiary . . . shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default."). Thus, "[u]nder California's non-judicial foreclosure statutes, [FCMC] could not conduct the trustee's sale until it sent the notice of default and the notice of sale." *Ho*, 858 F.3d at 573; *see Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 927 (2016) ("The trustee starts the nonjudicial foreclosure process by recording a notice of default and election to sell." (citing Cal. Civ. Code § 2924(a)(1))).

That said, *Ho* does not stand for the broad proposition that all attempts to enforce a security interests are exempt from the FDCPA:

> We do *not* hold that the FDCPA intended to exclude all entities whose principal purpose is to enforce security interests. If entities that enforce security interests engage in activities that constitute debt collection, they are debt collectors. We hold only that the enforcement of security interests is not always debt collection.

9

858 F.3d at 573 (emphasis in original). Plaintiff's characterization of his claim as one based on FCMC's and T.D. Service's "attempts to collect an inflated balance" rather than on their nonjudicial foreclosure activity (Opp'n at 5) does not save his claim. *See id.* at 6 ("Plaintiff's claim . . . is not based on a challenge to Defendants' right to foreclose on the Property, but based on Defendants' false representation of the amount of debt in connection with their collection of the debt."); Pl.'s Suppl. Br. at 3. Plaintiff cannot ignore the fact that FCMC and T.D. Service sent these communications to Plaintiff as part of the foreclosure process. Simply because "Plaintiff's lawsuit contains no allegation that Defendant FCMC was engaged in the ongoing foreclosure activity for Plaintiff's Property" (Pl.'s Suppl. Br. at 2) does not mean this was not the case. On the contrary, Plaintiff's own allegations indicate FCMC and T.D. Service were in fact engaged in foreclosure proceedings. *See* FAC ¶¶ 14, 29, 43 ("In or around January 2008, Plaintiff unexpectedly fell behind in his mortgage payments."); *id.* ¶ 18 ("On February 10, 2016, Defendant FCMC, on behalf of Defendant BOSCO, sent to Plaintiff a Notice of Default and Intent to Accelerate which stated that Plaintiff was past due in his payments since January 20, 2008."). Plaintiff does not explain how the addition of interest, even if improper, transforms a communication sent as part of the nonjudicial foreclosure process into something beyond the enforcement of a security interest. Plaintiff contends FCMC and T.D. Service "were acting outside of California's non-judicial foreclosure statute and attempting to collect money, i.e. improper interest and fees, from Plaintiff." Pl.'s Suppl. Br. at 3. But Plaintiff does not allege facts they were in fact trying to collect money, or that the nonjudicial foreclosure would not extinguish the "improper interests and fees." *See Ho*, 858 F.3d at 571-72 ("California law does not allow for a deficiency judgment following non-judicial foreclosure. This means that *the foreclosure extinguishes the entire debt* even if it results in a recovery of less than the amount of the debt." (citing Cal. Civ. Proc. Code § 580d(a)) (emphasis added)).

For instance, there are no facts that T.D. Service or FCMC demanded the payment of the interests of fees separate from the delinquent principal. As an initial matter, the mere fact that T.D. Service and FCMC communicated with Plaintiff does not violate the FDCPA, which "recognizes that repossessors will communicate with debtors. Enforcement of a security interest

will often involve communications between the forecloser and the consumer." *Ho*, 858 F.3d at 574 (footnote omitted). But there are no facts that T.D. Service or FCMC ever demanded payment and that the February 10 Notice and the Debt Validation Notices were anything more than informative. Rather, these Notices indicate the amount Plaintiff "must pay to cure default" (Feb. 10 Notice at 1 (capitalization omitted)) or "the amount required to reinstate or pay off the Debtor's account" (Debt Validation Notice at 1). The Debt Validation Notice advised Plaintiff of the amount owed and of his rights. Debt Validation Notice at 1. The February 10 Notice similarly apprised Plaintiff that he was "at risk at losing [his] home" and explained how he could cure the default. Notice of Default at 1. While the February 10 Notice informed Plaintiff how he could make a payment, this does not constitute a demand for payment. *See id.*; Debt Validation Notice; *Ho*, 858 F.3d at 574 ("The notices at issue in our case didn't request payment from Ho. They merely informed Ho that the foreclosure process had begun, explained the foreclosure timeline, apprised her of her rights and stated that she could contact [the lender] if she wished to make a payment.").

Nor is it dispositive that the February 10 Notice contains the disclaimer that "federal law requires us to advise you that Franklin Credit Management Corporation is a debt collector and this is an attempt to collect a debt" (Feb. 10 Notice at 1 (capitalization omitted)), or that the Debt Validation Notice states that "[t]he communication may be an attempt to collect a debt" (Debt Validation Notice at 1). *See Ho*, 858 F.3d at 574 n.7 (9th Cir. 2016) (although "the notice of trustee's sale included a disclaimer stating that [the trustee] 'is a debt collector attempting to collect a debt[,]' [t]his disclaimer isn't sufficient to show that [the trustee] is a debt collector. (citing *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 932 (9th Cir. 2007) (per curium); additional citations omitted)). Indeed, both Notices state they are for information purposes if debt has been discharged in bankruptcy or if the debtor is currently in bankruptcy proceedings. *See* Feb. 10 Notice at 1 ("To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy proceeding, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect an indebtedness as your personal obligation." (capitalization omitted)); Debt Validation Notice at 1 ("[I]f you have received a

discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is NOT intended as an attempt to collect a debt against you personally, but only as a notice advising you that the lender intends to exercise its rights set forth in its security interests as against the property." (capitalization in original)).

Accordingly, the Court DISMISSES Plaintiff's FDCPA claim. However, the Court does so with LEAVE TO AMEND in the event Plaintiff can base his claim on a violation that is not rooted in the Bankruptcy Code and also can allege facts showing T.D. Service and FCMC engaged in non-foreclosure-related acts which constitute debt collection.

## B.    California Civil Code § 2924c

Plaintiff's second cause of action alleges Bosco and FCMC violated California Civil Code section 2924c. FAC ¶¶ 38-50. Plaintiff premises this claim on Bosco's and FCMC's alleged violations of 11 U.S.C. § 524(a)(2)[4] and 11 U.S.C. § 506(b) based on their improperly charging of interest, fees, and other costs on Plaintiff's Loan while the Property was underwater. FAC ¶¶ 38-50. Defendants argue section 2924c is inapplicable to the interest and fees at issue. Mot. at 9.

As is relevant here, California Civil Code section 2924c(a)(1) provides that

> [w]henever all or a portion of the principal sum of any obligation secured by deed of trust or mortgage on real property . . . has . . . been declared due by reason of default . . . , the trustor or mortgagor . . . may pay to the beneficiary or the mortgagee or their successors in interest, respectively, the entire amount due, at the time payment is tendered, with respect to (A) all amounts of principal, interest, taxes, assessments, insurance premiums, or advances actually known by the beneficiary to be, and that are, in default and shown in the notice of default, under the terms of the deed of trust . . . , (B) all amounts in default on recurring obligations not shown in the notice of default, and (C) all reasonable costs and expenses . . . that are actually incurred in enforcing the terms of the . . . deed of trust . . . and thereby cure the default theretofore existing[.]

Upon the borrower's written request, the lender must provide "a written itemization of the entire amount" owed. Cal. Civ. Code § 2429c(b)(1). The borrower may cure the default any time between the "recordation of the notice of default until five business days prior to the date of sale

---

[4] Plaintiff's FAC alleges that "[p]ursuant to 11 U.S.C. § 524(2), a discharges operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." FAC ¶ 40. Plaintiff presumably intended to cite to 11 U.S.C. § 524*(a)*(2).

12

set forth in the initial recorded notice of sale." Cal. Civ. Code § 2924c(e).

Plaintiff fails to allege facts showing he sought or attempted to cure the default. Nor does he allege facts showing that either FCMC or Bosco failed to respond to his inquiries regarding the debt[5] or refused Plaintiff's offer to tender the deficient amount. On the contrary, Plaintiff repeatedly alleges FCMC provided additional documents concerning the Loan.[6] *See id.* ¶¶ 22, 33, 47 ("[O]n or around May 19, 2016, Defendant FCMC, on behalf of BOSCO, provided relevant loan documents, including but not limited to FCMC's loan history summary and payoff letter."). He does not contend these documents were insufficient.

Plaintiff instead appears to base his section 2924c claim on FCMC's and Bosco's alleged interference with his right to reinstate the Loan by adding interest and other fees to the Loan while the Property was underwater. *See* FAC ¶ 49 ("Defendants[ Bosco and FCMC's] demands for interest, fees, and costs as a condition of reinstatement thereby interferes with Plaintiff's statutory right to reinstatement pursuant to Civil Code 2924c."). Plaintiff fails to state a section 2924c claim and fails to show how violations of 11 U.S.C. § 524(a)(2) or § 506(b) gives rise to such a claim.

### 1. California Civil Code § 2924c

As an initial matter, Plaintiff fails to state a section 2924c claim because he does not allege he attempted to cure the default. *See Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982, 1001 (2016), *reh'g denied* (Mar. 11, 2016), *as modified* (Mar. 11, 2016) (where plaintiffs did not allege they

---

[5] Plaintiff alleges that "on or around April 21, 2016, Plaintiff sent T.D. Service a Debt Validation Letter." FAC ¶ 21. But Plaintiff does not assert his section 2924c claim against T.D. Service, only FCMC and Bosco. *See id.* at 8. There are no allegations that Plaintiff requested information from FCMC or Bosco, or that they failed to respond to such a request. *See generally id.* Moreover, assuming Plaintiff's Debt Validation Letter constitutes a request for information, the FAC does not describe what, if anything, the Debt Validation Letter requested or what purpose it otherwise served. Only in his Opposition does Plaintiff assert this letter "disput[ed] the alleged delinquency of $78,779.67, [the] majority of which consisted of interest which Defendants were not entitled to add to Plaintiff's [L]oan as an undersecured creditor following Plaintiff's Chapter 7 discharge." Opp'n 8. Plaintiff does not include these allegations in his FAC.

[6] The FAC does not make clear whether T.D. Service provided these documents in response to a request from Plaintiff. *See* FAC. Plaintiff alleges he sent T.D. Service a Debt Validation Letter (FAC ¶ 21); however, there are no allegations that Plaintiff sent FCMC any correspondence.

attempted to cure the default by making required monthly payments, the California Court of Appeal "conclude[d] they do not adequately allege violations of section 2924c"); *Selznick v. Wells Fargo Bank, N.A.*, 2015 WL 12697874, at *6 (C.D. Cal. Apr. 10, 2015) ("Plaintiff does not allege a violation of section 2924c because she does not allege that she sufficiently tendered the amount necessary to cure her arrears."); *Gerard v. Wells Fargo Bank Nat'l Ass'n*, 2015 WL 12778775, at *6 (C.D. Cal. Mar. 11, 2015) (dismissing section 2924c claim where, among other things, the "[p]laintiff d[id] not allege any facts indicating that she attempted to cure the default prior to January 28, 2014 and in accordance with the terms set forth in the reinstatement letter"); *Estrada v. Nationstar Mortg., LLC*, 2013 WL 4120803, at *4 (N.D. Cal. Aug. 9, 2013) (dismissing section 2924c claim where plaintiffs did not allege the lender refused their offer to tender the deficient amount, did not allege they demanded an accounting of their current default, and alleged no facts showing lender prevented them from curing default). The FAC does not allege Plaintiff attempted to cure the default, or that FCMC or Bosco prevented him from doing so.

In addition, Plaintiff fails to state a section 2924c claim because he does not allege FCMC or Bosco attempted to charge him interest after the notice of default was recorded. Plaintiff conclusorily argues that "[b]y demanding improper interest and late fees as a condition to cure the default or payoff the loan, Defendants have interfere[]d with Plaintiff's statutory right to reinstatement pursuant to Civil Code 2924c. Therefore, Plaintiff has sufficiently set forth a cause of action for violation of California Civil Code § 2924c[.]" Opp'n at 8. That Defendants charged interest and late fees is not, on its own, improper; rather, the timing of those charges is key. "Civil Code section[] 2924c . . . regulate[s] costs that may be charged to a borrower only after notices of default and sale have been recorded. [It] do[es] not apply to charges incurred *before* such notices have been recorded." *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1174 (2002) (emphasis added). This is because

> Civil Code section 2924c refers to the payment of the amount due as "shown in the notice of default." The notice of default provides notice to the borrower and other interested parties of the specific amount that is owed so that the default can be cured. [citation] After the notice of default is recorded, borrowers are responsible only for the amounts stated in the notice of default plus specific costs and expenses delineated by statute.

*Id.*

Plaintiff alleges "on or around March 15, 2016, FCMC, on behalf of BOSCO, caused T.D. Service to record a Notice of Default[.]"[7] FAC ¶¶ 19, 58. He further alleges Bosco and FCMC improperly charged interest because "during the period of June 2009 to June 2010, FCMC's loan history reflects monthly late charges of $45.00." *Id.* ¶¶ 22, 33, 47 (citing *id.*, Ex. A (FCMC Loan History Summary dated May 6, 2016)).[8] As these fees were incurred prior to the March 15, 2016 recordation of the notice of default, Plaintiff cannot use them as a basis for his section 2924c claim. Plaintiff does not otherwise argue these fees are not "reasonable costs and expenses . . . that are actually incurred in enforcing the terms of the obligation, deed of trust, or mortgage[.]" Cal. Civ. Code § 2924c(a)(1).

The only other fees or charges to which Plaintiff refers do not support a section 2924c violation. The February 10 Notice was sent to Plaintiff more than a month before Plaintiff alleges the notice of default was recorded on March 15, 2016. *Compare* FAC ¶ 46 *with id.* ¶¶ 46, 58. As the February 10 does not indicate it includes any future fees (*see* Feb. 10 Notice), any interest and fees listed therein could therefore only have been charged before March 15, 2016.[9]

The FAC alleges no facts showing FCMC or Bosco charged Plaintiff interest and other fees after the notice of default was recorded on March 15, 2016. Plaintiff accordingly has not

---

[7] Defendants represent that the February 10 Notice is not the notice of default that was recorded on March 15, 2016. Mot. at 10 n.2; *see* Feb. 10 Notice. Plaintiff does not dispute this. *See* Opp'n.

[8] As this document is attached to and relied upon in the FAC and as Defendants do not question its authenticity, the Court may consider it in ruling on the Motion to Dismiss. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.").

[9] Although Plaintiff asserts his section 2924c claim only against Bosco and FCMC, to the extent he relies on communications from T.D. Service, such efforts fail. *See* FAC ¶ 47 ("[A]ccording to the payoff statement from T.D. Service dated May 18, 2016, the total amount necessary to pay[]off the loan as of May 31, 2016 was $185,439.21, almost double of the total secured debt owed to Defendant FCMC at the time of Plaintiff's Chapter 7 bankruptcy filing on February 2, 2009![]" (citing *id.*, Ex. B)). The statement, dated May 18, 2016, was sent to Plaintiff after the notice of default was recorded. *See id.*, Ex. B. However, the statement does not identify when the interests and other fees were incurred. *See id.*

1    stated a claim for a section 2924c violation.

2        2.   <u>11 U.S.C. § 524(a)(2)</u>

3        Assuming the FAC alleges facts showing FCMC and Bosco prevented Plaintiff from

4    reinstating the Loan, Plaintiff nevertheless fails to clearly articulate how FCMC's and Bosco's

5    violation of 11 U.S.C. § 524(a)(2) interfered with his right to reinstatement under section 2924c.

6    Section 524(a)(2) provides that "[a] discharge . . . operates as an injunction against the

7    commencement or continuation of an action, the employment of process, or an act, to collect,

8    recover or offset any such debt as a personal liability of the debtor, whether or not discharge of

9    such debt is waived[.]"  As an initial matter, Plaintiff appears to make two conflicting arguments.

10   On one hand, Plaintiff argues T.D. Service and Bosco did not have the right to collect the debt

11   because the debt had been discharged pursuant to 11 U.S.C. § 524(a)(2).  On the other hand,

12   Plaintiff also argues T.D. Service and Bosco denied him the right to reinstate the debt—the very

13   debt he contends was discharged in bankruptcy—in violation of California Civil Code section

14   2429c.  Plaintiff does not attempt to reconcile these contradictory positions.

15       Section 524(a)(2) enjoins creditors from attempting to collect a discharged debt as a

16   personal liability.[10]  *See, e.g.*, *In re Pavelich*, 229 B.R. 777, 781 (B.A.P. 9th Cir. 1999), *as*

17   *amended* (Feb. 22, 1999) ("The discharge also operates as an injunction against the

18   commencement or continuation of an action to collect a discharged debt as a personal liability of

19   the debtor." (citing 11 U.S.C. § 524(a)(2))); *In re Garske*, 286 B.R. 773, 774 (Bankr. N.D. Cal.),

20   *aff'd*, 287 B.R. 537 (B.A.P. 9th Cir. 2002) ("In order to violate the discharge injunction, a creditor

21   must take action to collect a debt as a personal liability of the debtor."); *In re Vogt*, 257 B.R. 65,

22   71 (Bankr. D. Colo. 2000) ("Clearly, section 524(a)(2) is implicated if the creditor, after the

23

24   [10] The Supreme Court has noted that

25           [a] defaulting debtor can protect himself from personal liability by
             obtaining a discharge in a Chapter 7 liquidation.  *See* 11 U.S.C. §

26           727.  However, such a discharge extinguishes *only* "the personal
             liability of the debtor."  11 U.S.C. § 524(a)(1). . . . [T]he Code

27           provides that a creditor's right to foreclose on the mortgage survives
             or passes through the bankruptcy.  *See* 11 U.S.C. § 522(c)(2)[.]

28   *Johnson v. Home State Bank*, 501 U.S. 78, 82–83 (1991) (emphasis in original).

debtor's discharge, writes a letter to the debtor saying: 'Your discharge be damned—pay your debt!' This is exactly the kind of hectoring, dunning demand that Congress intended to stop."). Plaintiff fails to articulate a coherent theory as to how a § 524(a)(2) violation gives rise to a section 2924c claim. Indeed, Plaintiff's Opposition makes no attempt to connect the predicate violation to the overarching claim. *See* Opp'n at 8. Plaintiff appears to assert Bosco and FCMC interfered with his right to reinstatement by impermissibly adding interest onto his Loan; however, he fails to allege plausible facts showing how this interfered with his rights under section 2924c. At this point, there are no facts to allow the Court to reasonably infer Bosco and FCMC are liable under section 2924c.

Even assuming Plaintiff articulates a theory as to how a § 524(a)(2) violation gives rise to a section 2924c claim, he nonetheless fails allege sufficient facts to establish T.D. Service and Bosco violated the predicate offense. Although Plaintiff alleges he received a discharge in his Chapter 7 bankruptcy proceeding (FAC ¶¶ 16, 30, 44, 55, 67), he asserts no plausible facts that the Loan was included in the discharge. He instead alleges that he "is informed and believes that Plaintiff's personal obligation to pay the debt had been discharged." *Id.* ¶¶ 16, 67. "'The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.'" *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)) (edits in *Soo Park*). There is no reason to believe that the details of Plaintiff's discharge are unavailable to him, nor is there any indication that such information is solely within Defendants' possession and control. To that end, Plaintiff does not offer any facts about the discharge to support his belief that it included the Loan such that the Loan is subject to § 524(a)(2)'s injunction. *See Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 449 n.4 (2004) ("[A] discharge order under the Bankruptcy Code 'operates as an injunction' against creditors who commence or continue an action against a debtor *in personam* to recover or to collect a discharged debt, 11 U.S.C. § 524(a)(2)[.]"); *In re Eber*, 687 F.3d 1123, 1128 (9th Cir. 2012) ("The permanent injunction under § 524(a)(2) . . . enjoins creditor actions

related to discharged debts."). Without more, Plaintiff's contention that Bosco and FCMC violated § 524(a)(2) is merely conclusory.

### 3. 11 U.S.C. § 506(b)

Plaintiff also predicates his reinstatement claim on an alleged violation of 11 U.S.C. § 506(b). FAC ¶¶ 41, 49. Section 506(b) provides for the payment of certain fees and costs to an over-secured creditor:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

Section 506(b) requires a showing of four factors: "(1) the claim must be an allowed secured claim; (2) the creditor holding the claim must be over-secured; (3) the entitlement to fees, costs, or charges must be provided for under the agreement or state statute under which the claim arose; and (4) the fees, costs and charges sought must be reasonable in amount." *In re McCormick*, 523 B.R. 151, 154 (B.A.P. 8th Cir. 2014), *appeal dismissed*, 812 F.3d 659 (8th Cir. 2016) (internal quotation marks omitted); *see In re Hoopai*, 581 F.3d 1090, 1098 (9th Cir. 2009) (pursuant to § 506(b), "a creditor is entitled to attorneys' fees if (1) the claim is an allowed secured claim; (2) the creditor is oversecured; (3) the fees are reasonable; and (4) the fees are provided for under the agreement." (internal quotation marks omitted)).

Plaintiff alleges that "to the extent that a claim is secured by a property, the value of which is less than the amount of such claim, the creditor is not entitled to interest on such claim, fees, costs, or charges provided for under the agreement." FAC ¶¶ 27, 41. Plaintiff asserts that because the Property was underwater—that is, "the value of his [P]roperty was less than the total secured debt on his Property" (*id.* ¶ 48)—"pursuant to 11 U.S.C. [§] 506(b), BOSCO was not entitled to interest, fees, costs, or charges under the agreement, [and] Defendants' demands for interest, fees, and costs as a condition of reinstatement thereby interferes with Plaintiff's statutory right to reinstatement pursuant to Civil Code [section] 2924c" (*id.* ¶ 49). In other words, Plaintiff appears to contend that while § 506(b) entitles oversecured creditors to fees and other charges, Bosco, as

18

an undersecured creditor, is prohibited from seeking such fees under this statute.

"[Section] 506[] . . . [has a] substantive effect of denying undersecured creditors postpetition interest on their claims—just as it denies *over* secured creditors postpetition interest to the extent that such interest, when added to the principal amount of the claim, will exceed the value of the collateral." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 372 (1988) (emphasis in original); *see In re Warkentin*, 461 B.R. 636, 640 (Bankr. D. Or. 2011) ("Generally, postpetition attorney's fees and costs will not be allowed as part of a secured claim unless the claim is 'oversecured,' meaning that the value of collateral securing the claim exceeds the amount of the claim." (citing 4 Collier on Bankruptcy ¶ 506.04)).  This derives from § 506(b)'s provision

> that "*[t]o the extent* that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim."   (Emphasis added.)   Since this provision permits postpetition interest to be paid only out of the "security cushion," the undersecured creditor, who has no such cushion, falls within the general rule disallowing postpetition interest.   *See* 11 U.S.C. § 502(b)(2).

*Timbers*, 484 U.S. at 372-73 (edits in original).

Taking as true Plaintiff's allegation that Bosco is an undersecured creditor and cannot seek interest and other fees, Plaintiff's attempt to use § 506(b) to establish a violation of California Civil Code section 2429c fails.  As noted, there are no facts that Plaintiff sought to reinstate his Loan, nor are there facts that show how the addition of interest—even if prohibited under § 506(b)—prevented him from doing so.  As such, Plaintiff fails to state a section 2429c claim based on an alleged violation of § 506(b).

   3. <u>Preemption</u>

Having found Plaintiff fails to state a reinstatement claim based on §§ 524(a)(2) and 506(b), the Court considers whether allowing Plaintiff to amend this claim based on these theories is futile.  Defendants contend that to the extent Plaintiff's section 2924c claim is predicated on violations of §§ 524(a) and 506(b), the section 2924c claim is preempted by the Bankruptcy Code. Mot. at 7, 11.  Plaintiff does not respond to this argument.  *See* Opp'n.

"[W]hile . . . not all state claims related to bankruptcy may be preempted by the [Bankruptcy] Code, . . . the Ninth Circuit and th[e Bankruptcy Appellate] Panel have steadfastly held that the Code preempts substantive state law claims and remedies for alleged misconduct that occurs in connection with a bankruptcy case." *In re Chaussee*, 399 B.R. 225, 232 (B.A.P. 9th Cir. 2008). For instance, in holding the Bankruptcy Code preempts state malicious prosecution actions based on events that take place during bankruptcy proceedings, the Ninth Circuit found that

> a mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike.[] While it is true that bankruptcy law makes reference to state law at many points, the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal. It is very unlikely that Congress intended to permit the superimposition of state remedies on the many activities that might be undertaken in the management of the bankruptcy process.

*MSR Exp., Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910,914 (9th Cir. 1996) (footnote omitted). "[T]he highly complex laws needed to constitute the bankruptcy courts and regulate the rights of debtors and creditors also underscore the need to jealously guard the bankruptcy process from even slight incursions and disruptions brought about by state malicious prosecution actions." *Id.* That "Congress . . . provide[d] a number of remedies designed to preclude the misuse of the bankruptcy process. . . . suggests that Congress has considered the need to deter misuse of the process and has not merely overlooked the creation of additional deterrents." *Id.* at 915.

The Ninth Circuit has also held that 11 U.S.C. § 303(i) preempts state law tort causes of action arising from the filing and prosecution of involuntary bankruptcy petitions filed in bad faith. *See In re Miles*, 430 F.3d 1083 (9th Cir. 2005). Relying on *MSR Exploration*, the *Miles* court "h[e]ld that Congress intended 11 U.S.C. § 303(i) to provide the exclusive basis for awarding damages predicated upon the filing of an involuntary bankruptcy petition." *Id.* at 1089. The *Miles* court based this holding on two reasons. First, it emphasized "the need for uniformity in the administration of the bankruptcy laws": "Permitting state courts to decide whether the filing of an involuntary bankruptcy petition was appropriate would subvert the exclusive jurisdiction of the federal courts and undermine uniformity in bankruptcy law by allowing state courts to create

their own standards as to when a creditor may properly file an involuntary petition." *Id.* at 1090. Second, the court found "Congress intended the Bankruptcy Code to create a whole scheme under federal control that would adjust all of the rights and duties of creditors and debtors alike[.]" *Id.* at 1091. Congress therefore expressed a "clear intent to provide damage awards only to the debtor in federal proceedings predicated upon the bad faith filing of an involuntary petition that Congress did not intend third parties to be able to circumvent this rule by pursuing those very claims in state court." *Id.*

But not "all state actions related to bankruptcy proceedings are subject to the complete preemption doctrine." *Id.* at 1092 ("We recognize that because the common law of the various states provides much of the legal framework for the operation of the bankruptcy system, it cannot be said that Congress has completely preempted all state regulation which may affect the actions of parties in bankruptcy court." (internal quotation marks omitted)). Courts have generally found preemption only where the Bankruptcy Code provides remedies for the at-issue conduct and where "uniform rules are particularly important." *Id.* (internal quotation marks omitted).

*Walls* is again instructive as to § 524(a), where the Ninth Circuit "decline[d] . . . to expand the remedies available under the Bankruptcy Code for violating § 524." *Walls*, 276 F.3d at 507. To allow Plaintiff to use section 2924c as a means to seek relief for violations of the Bankruptcy Code would create a "back door [to] what [Plaintiff] cannot accomplish through the front door—a private right of action." *Id.* at 510. Noting "[c]ivil contempt is the normal sanction for violation of the discharge injunction[,]" the court held this sanction "allows an aggrieved debtor to obtain compensatory damages, attorneys fees, and the offending creditor's compliance with the discharge injunction. Therefore, contempt is the appropriate remedy and no further remedy is necessary." *Id.* at 507 (internal quotation marks omitted); *see id.* ("[Section] 105(a) authorizes only such remedies as are "necessary or appropriate to carry out the provisions of this title."). As such, the Court finds Plaintiff cannot state a section 2429c claim based on § 524(a) violation; his sole remedy for a § 524(a)(2) violation lies within the Bankruptcy Code.

Plaintiff is similarly precluded from seeking relief from a § 506(b) violation through means outside of the Bankruptcy Code. The Ninth Circuit has not yet addressed whether the Bankruptcy

21

Code provides the sole remedy for a § 506(b) violation. However, the Third Circuit, relying on *Walls*, has held that "the lone remedy [for a § 506(b) violation] is a contempt proceeding pursuant to § 105(a) in bankruptcy court." *In re Joubert*, 411 F.3d 452, 455 (3d Cir. 2005). In so holding, the Third Circuit "consider[ed] the analogous § 524 case law applicable to [the] § 506(b)-based claim" and "agree[d] with the reasoning of [*Walls* and *Pertuso*], and see no reason why the rule should be different for actions asserted under § 506(b) rather than § 524." *Id.* at 455-56.

The Court agrees with the reasoning of *Joubert*. Section 105(a) applies equally to § 506(b) as it does to § 524(a). *See* 11 U.S.C. § 103(a) ("Except as provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title, and this chapter, sections 307, 362(o), 555 through 557, and 559 through 562 apply in a case under chapter 15."). "Bankruptcy courts require full control of the remedies available for addressing improprieties occurring in the cases on their dockets." *Chaussee*, 399 B.R. at 234. To allow Plaintiff to use section 2924c as a means to seek relief for violations of the Bankruptcy Code would create a "back door [to] what [Plaintiff] cannot accomplish through the front door—a private right of action." *Walls*, 276 F.3d at 510. "Put simply, Congress did not intend to allow a debtor to bypass the statutory scheme clearly embodied in the language of the Code." *Chaussee*, 399 B.R. at 237. Accordingly, the Court finds Plaintiff cannot state a section 2924c claim based on a violation of § 506(b).

    4.   <u>Summary</u>

In light of the foregoing, the Court DISMISSES Plaintiff's section 2924c claim to the extent it is predicated on violations of 11 U.S.C. §§ 506(b) and 524(a)(2) WITH PREJUDICE. The Court also DISMISSES this claim generally, as the FAC contains no allegations as to how Bosco and FCMC otherwise violated section 2924c. However, the Court will grant Plaintiff leave to amend, provided he can allege sufficient facts to support a section 2924c claim that is not predicated on a violation of 11 U.S.C. §§ 506(b) or 524(a)(2).

**C.    California Civil Code § 2924.17**

In relevant part, California Civil Code section 2924.17(b) provides that "[b]efore recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it

has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information." One of the documents described in California Civil Code section 2924(a) is a notice of default.

Plaintiff alleges FCMC "record[ed] a Notice of Default for Plaintiff's Property which was inaccurate, without reviewing competent and reliable evidence to substantiate Plaintiff's default" in violation of section 2924.17(b). FAC ¶ 54. Specifically, Plaintiff asserts he "is informed and believes and therefore alleges that the amount listed in the Notice of Default is incorrect. As such, Defendant [FCMC] failed to review competent and reliable evidence to substantiate the borrower's loan status and loan information in violation of Civil Code § 2924.17." *Id.* ¶ 59. Plaintiff seeks injunctive relief for this violation. *Id.* ¶ 60.

Plaintiff's theory for his section 2924.17 claim appears to be the same as that underlying his section 2924c claim: the February 10 Notice lists an incorrect amount on account of the allegedly improper addition of interest to the amount owed on the Loan. *See id.* ¶ 56 ("Defendants BOSCO and FCMC are not entitled to add late charges or interest to his loan."); *id.* ¶ 57 ("According to the notice, the total delinquency owed on the loan was $76,961.99, $75,606.99 of which was interest and $1,260.00 of which was late charges."); *id.* ¶ 58 ("[O]n or around March 15, 2016, FCMC, on behalf of BOSCO, caused T.D. Service to record a Notice of Default which indicated that the amount necessary to reinstate the loan was $78,776.67, for principal and interest which became due on the loan since January 2008.").

As discussed above, Plaintiff fails to allege facts showing Defendants were not entitled to add interest and other fees to his debt. To the extent Plaintiff's section 2924.17 claim is predicated on such conduct, this claim also fails. Moreover, Plaintiff fails to allege facts that show he is entitled to his requested injunctive relief. *See* FAC ¶ 60. "If a foreclosure sale has not occurred, and no trustee's deed upon sale has been recorded, a borrower may only bring an action for injunctive relief to enjoin a violation of Civil Code section 2924.17." *Rae v. Bank of Am., N.A.*, 2017 WL 447306, at *4 (C.D. Cal. Feb. 1, 2017) (citing Cal. Civ. Code § 2924.12(a)(1)). Plaintiff does not allege a trustee's deed upon sale has not been recorded. *See* FAC; Cal. Civ. Code § 2924.12(a). There are no facts that a foreclosure sale is pending and therefore anything for the

Court to enjoin.  *See Rae*, 2017 WL 447306, at *4.

Accordingly, the Court DISMISSES Plaintiff's section 2924.17 claim.  However, because there is a possibility Plaintiff may possess facts that show Defendants were not entitled to seek interest or other fees on the Loan or that show FCMC otherwise violated section 2924.17, the Court shall permit Plaintiff leave to amend this claim.

**D.      Negligence**

Plaintiff brings his negligence claim against Bosco and FCMC.  FAC at 12.  He alleges an unspecified "Defendant negligently handled [his] loan by improperly adding interest, late charges, and fees following Plaintiff's Chapter 7 discharge and during the period in which Plaintiff's Property continues to be underwater."  *Id.* ¶ 69; *see id.* ¶ 64 ("Defendants negligently handled Plaintiff's loan account.").[11]

"In order to establish negligence under California law, a plaintiff must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages."  *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003) (citing *Martinez v. Pac. Bell*, 225 Cal. App. 3d 1557, 1564 (1990)).  "Whether a duty of care exists is a question of law to be determined on a case-by-case basis."  *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 62 (2013).  "'[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.'"  *Lueras*, 221 Cal. App. 4th at 63 (quoting *Nymark* 231 Cal. App. 3d at 1096) (brackets in *Lueras*).  But this "general rule" is not a "sweeping conclusion that a lender *never* owes a duty of care to a borrower."  *Newson v. Countrywide Home Loans, Inc.*, 2010 WL 4939795, at *5 (N.D. Cal. Nov. 30, 2010) (emphasis in original); *see Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 901 (2013), *as modified on denial of reh'g* (Mar. 7, 2013) ("Even when the lender is acting as a conventional lender, the no-duty rule is only a general rule.").  Rather,

[i]n  California,  the  test  for  determining  whether  a  financial

---

[11] While Plaintiff also references "the payoff statement from T.D. Service dated May 18, 2016[,]" (FAC ¶ 69), he does not assert his negligence claim against T.D. Service.

24

institution owes a duty of care to a borrower-client "involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm."

*Nymark*, 231 Cal. App. 3d at 1098 (quoting *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958)) (brackets in *Nymark*). These six factors are commonly known as the "*Biankanja* factors."

Assuming, *arguendo*, Bosco and FCMC owed Plaintiff a duty of care, Plaintiff does not allege facts demonstrating they breached that duty. As discussed above, there are no facts that the addition of interest and other charges on the Loan was improper. Moreover, although Plaintiff does not specifically reference § 506(b) in relation to his negligence claim, that appears to form the basis of this claim. *Compare* FAC ¶ 68 ("Plaintiff is informed and believes that Defendants BOSCO and FCMC are not entitled to add late charges or interest to his loan.") & ¶ 69 ("Defendant negligently handled Plaintiff's loan by improperly adding interest, late charges, and fees following Plaintiff's Chapter 7 discharge and during the period in which Plaintiff's Property continues to be underwater.") *with id.* ¶¶ 27, 41, 44, 49, 55 (alleging § 506(b) limits Defendants' ability to collect interest and other fees while the Property is underwater). To the extent Plaintiff's negligence claim is based on a violation of § 506(b), for the reasons stated above, Plaintiff cannot establish Defendants' liability via a negligence claim.

Because Plaintiff's only basis for his negligence claim is the allegedly improper addition of interest and other charges, the Court cannot find Plaintiff alleges sufficient facts that Defendants breached their duty toward Plaintiff, even if one is owed. Accordingly, the Court DISMISSES Plaintiff's negligence claim. To the extent Plaintiff's negligence claim is based on a § 506(b) violation, the dismissal is WITH PREJUDICE.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss. To the extent Plaintiff's claims are based on violations of the Bankruptcy Code, the dismissal is WITH PREJUDICE. Because Plaintiff may possess facts that otherwise support his claims, the Court will grant him LEAVE TO AMEND so that he may allege such facts. Plaintiff's amended

25

complaint is due no later than September 1, 2017.

**IT IS SO ORDERED.**

Dated: August 10, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge